## CHIVINGTON v. THE COLORADO SPRINGS CO.

1. Under the Civil Code no default can be entered for want of answer while a motion to quash the return upon the summons is pending and undetermined.
2. It is not error to require payment of the penalty adjudged upon overruling a demurrer or motion, under section 57 of the code, as a condition precedent to pleading over.
3. The statute of limitations is a good defense in ejectment, but under the present practice it must be specially pleaded in this as in other actions, or the defense is waived.
4. When plaintiff has legally parted with his title and right to occupy, he cannot recover in ejectment, even though defendant's paper title be fatally defective.
5. If a grantor duly acknowledges an instrument conveying land, and authorizes its delivery, he cannot afterwards avoid the same on the ground that his signature thereto was forged.

| | |
|---|---|
| 9 | 597 |
| 10 | 283 |
| 10 | 402 |
| 9 | 597 |
| 12 | 389 |
| 9 | 597 |
| 13 | 555 |
| 9 | 597 |
| 15 | 375 |
| 9 | 597 |
| 19 | 563 |
| 9 | 597 |
| 20 | 201 |
| 9 | 597 |
| 21 | 85 |
| 9 | 597 |
| 13a | 447 |
| 9 | 597 |
| 135 | 292 |

6. The certificate of the acknowledging officer may, in some cases, be impeached for fraud, duress or gross concurrent mistake, but the proof must be clear, strong, convincing, and by disinterested witnesses.
7. When the evidence is such that it would be the court's unquestioned duty to set aside a verdict for plaintiff, should one be returned, a verdict for defendant may be directed. .

*Appeal from District Court of Pueblo County.*

THIS was an action of ejectment.

The complaint was as follows:

"For that the said plaintiff, on the 1st day of December, A. D. 1865, was possessed of a certain parcel of land with the appurtenances, lying in the county of El Paso, in the state of Colorado, and described as follows, to wit: the north half of the southwest quarter of section 5, township 14 south, range 67 west, of which said lands and tenements the plaintiff is seized in fee by and through divers mesne conveyances from the government of the United States to plaintiff, and the plaintiff being so thereof possessed, the defendant afterwards, to wit, on the 1st day of August, A. D. 1882, unlawfully entered upon said premises and ousted said plaintiff therefrom, and thence hitherto and now wrongfully withholds from the plaintiff certain portions and parcels thereof, that is to say, lots 24, 28, 29 and 26, in block "A," and lots 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19 and 20, and south one-half of lot 21 in block "B," and lots 1, 2, 3, 4, 5, 7, 8, 14, 16, 20, 22, 13½, 14½, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34 and 35, block "D," and lots 8 and 29, block "C," west thirty-eight feet lot 4, block "F," within the said north half of the southwest quarter of section 5, township 14 south, range 67 west, and in what is now known as Manitou, in the county and state aforesaid; which said wrongful ouster and wrongful withholding of said premises by the defendant was and is to the damage of the plaintiff in $5,000, and of which said pieces and parcels of land, and each of them, the plaintiff is entitled to the

immediate possession.   Wherefore plaintiff prays judgment for the possession of the said several lots and parcels of land; also for the sum of $5,000 for the wrongful ouster and detention thereof, and for costs of suit."

To which the defendant answered as follows:

"Denies that the plaintiff is seized in fee or otherwise of the premises described in said complaint, and in controversy in this action, or any part thereof, or has or had, at the time of the commencement of this action, any right, title, interest, estate, claim or color of claim thereto, either in law or equity, by or through the United States, or from any other source whatsoever.

"Denies that the defendant unlawfully entered upon the premises in controversy on the 1st day of August, 1882, or at any other time, and denies that it ever ousted the plaintiff therefrom.

"Denies that the plaintiff has been or is damaged in the sum of $5,000, or in any other sum, by reason of any act or thing had or done by the defendant in or about the possession, use, occupation or detention of the premises in controversy; or that plaintiff is damaged at all by reason of any matter or thing alleged in said complaint.

"Denies that the plaintiff is entitled to the possession, immediately or otherwise, of the said premises, or any part or parcel thereof.

"And for another and separate defense to the cause of action set out in plaintiff's complaint the defendant alleges that, at the time of the commencement of this action, it was and is seized in fee-simple and in the possession, and entitled to the possession, of all and singular the lots and parcels of land mentioned and described in the complaint, and sought to be recovered in this action, without any right or title thereto being vested in the plaintiff.

"And for another and separate defense to this action defendant alleges that, for a period of more than five successive years immediately preceding the commence-

ment of this action, the defendant was in and enjoyed the peaceable, undisputed and continuous possession of all and singular the lots and parcels of land described in the complaint and in controversy in this action, and that said possession, during the whole of said period, was held by the defendant under claim by and color of title in it to said premises in fee-simple, and that such claim and color of title was had, made and held by defendant in good faith at all times. That during the whole of the time that the defendant was so in possession of said premises, under said claim and color of title, the defendants duly paid and caused to be paid all taxes legally assessed upon and against said lots and parcels of land as and for its property in fee by virtue of said color of title, whereby and by force of the statute in such case made and provided the defendant is held and deemed to be seized in fee of said premises and entitled to have and retain the possession thereof.

"And for a further and separate defense to this action defendant alleges that, for and during a period of more than five successive years immediately preceding the commencement of this action, the defendant, in good faith, continuously claimed to be the owner in fee-simple and at all times entitled to the possession of all and singular the premises described in the complaint and in controversy herein, and that such claim was at all times made by defendant under color of title by deed purporting to convey to and vest in the defendant an estate in fee-simple in and to the whole of said premises. That during the whole of the period aforesaid the said premises continued vacant and unoccupied, and the said claim of defendant remained undisputed; and, further, that during the whole of said period aforementioned the defendant duly paid and caused to be paid all taxes legally assessed upon and against said premises, and that such payment was made and continued to be made by defendant under the *bona fide* belief that it was the owner of

said premises in fee-simple under and by virtue of said color of title, and that during said time no other person or persons whomsoever paid any taxes upon said premises either for the whole of said term or any part thereof, whereby and by force of the statute in such case made and provided the defendant is held and deemed to be seized in fee of said premises, and in law is entitled to the full and exclusive possession thereof."

The defendant demurred to the first "separate" defense and moved to strike out the second and third separate defenses. The demurrer and motion were overruled. The plaintiff excepted to the ruling of the court on the motion and replied, specifically traversing the separate defenses.

Upon the conclusion of the evidence the court instructed the jury as follows:

"The jury is hereby instructed that under the evidence adduced upon the trial of this cause, and the questions of law determined by the court, your verdict herein must be for the defendant.

"The form of your verdict may be as follows: We, the jury, upon the issues joined herein, find for the defendant."

To which the plaintiff excepted. Thereupon the jury returned a verdict in favor of the defendant, upon which judgment was rendered. To reverse said judgment the plaintiff appealed to this court.

Among the errors assigned in this court were the rulings of the district court in refusing to strike out the second and third separate defenses, and upon the instruction of the court directing a verdict for the defendant. No plea or defense of innocent purchaser for value without notice was interposed by the defendant.

Mr. L. B. FRANCE, for appellant.

Messrs. WALDRON and BENEDICT and PHELPS, for appellee.

Helm, J. The court committed no error in refusing a default for want of answer. Within the period allowed for pleading, defendant filed its motion to quash the sheriff's return to the summons, and when the application for default was submitted, this motion was still pending. Section 149 of the Civil Code must be construed in connection with the provisions of that instrument that relate to the time of answering. Under this section, as amended in 1881, no default could be entered while the motion to quash remained undetermined.

We shall decline to reverse the judgment because the court required plaintiff, before filing his replication, to pay the $10 previously awarded to defendant. The judgment for that sum was entered against plaintiff under section 57 of the code, upon the denial of his demurrer and motion. With the alleged unreasonableness of this statute we have nothing to do. It was framed upon the theory of compensation to the successful party, for extra and unnecessary expense occasioned by the demurrer or motion overruled, and is, in this respect, analogous to laws providing for the recovery of costs. It may also have been intended to secure greater caution by parties and counsel, and to prevent the filing of sham and frivolous pleadings of the kind mentioned. We are not prepared to hold the statute unconstitutional, and it clearly warranted the ruling in question.

Nor did the court err in denying plaintiff's motion to strike from the answer, as "immaterial, irrelevant and redundant," certain defenses therein averred. Chapter 27 of the Revised Statutes, on the subject of ejectment, was repealed in 1877, and the "general issue" no longer performs the office therein assigned to it. Chapter 23 of the code applies to this class of actions the general rules of pleading specified elsewhere in that instrument; besides, it expressly allows defendant to set up affirmatively the character of the estate, or right of possession or occupancy through which he claims. Section 2189 of the

General Statutes, referring to the limitation of actions, prescribes a rule of pleading. It was originally framed with reference to the existing law which inhibited in ejectment all pleas save the "general issue only." It did not then, nor does it now, preclude the defendant in ejectment from availing himself of this defense. But, as a rule of pleading, it is modified by the subsequent provisions of the code above mentioned. Under the present practice, the statute of limitations must be specially pleaded in this as well as other actions, or the defense will be considered waived.

For the purposes of this case, it is a matter of no importance whether the defendant company and its immediate grantors were, at the time of the conveyances to them, capable of taking title to real estate in Colorado. There were intermediate deeds between them and plaintiff to other parties whose capacity in this respect is not questioned. The action is in the nature of ejectment, and, except as modified by statute, the common law principles pertaining to ejectment are applicable. Neither mines nor mining claims are in controversy, and the verdict must be for defendant unless plaintiff makes out a case; moreover, the latter must recover, if at all, upon the strength of his own title or right to possess and occupy; if he has legally parted with both he cannot maintain the action, even though defendant's paper title be fatally defective.

We proceed now to consider the main question presented, viz.: Did Chivington part with his title to the property by valid and binding conveyances?

He asserts that the power of attorney from himself to Pollock, offered in evidence, is a forgery. But when upon the witness stand he contented himself with the declaration that he did not *sign* the paper or authorize any one else to attach his name thereto. He did not fairly question the *bona fides* of his acknowledgment appended to the instrument, nor did he deny that he authorized the delivery thereof. It is strange, indeed, if in

truth the acknowledgment is also forged, and if no delivery was authorized by him, that when testifying he failed to specifically mention these two important matters.    It is also a circumstance of sufficient significance to be noticed, that the notary public who made the certificate of acknowledgment, and who was present at the trial in the employ of plaintiff, was not called upon to offer any explanation touching the same.    Testimony by him admitting that he made this certificate, but asserting that it was untrue, would be entitled to little consideration.    *Wilson v. S. P. Com'rs*, 70 Ill. 46.    But his sworn declaration that the certificate itself was a forgery might be very important.

Whether plaintiff actually *signed* or previously directed another to sign his name to the instrument may be a matter of no importance.    Admitting for the purposes of the argument that his testimony in this regard is true, the power of attorney is still not necessarily void.    If he duly acknowledged the instrument and authorized its delivery, he thereby recognized and adopted the signature and seal, making them his own for the purposes of the conveyance.    *Clough v. Clough*, 73 Maine, 487; *Kerr v. Russell*, 69 Ill. 666.

We have not overlooked the fact that while giving his testimony plaintiff was asked when he first saw the power of attorney, and answered " Yesterday."    This question and answer were preliminary to the statement that his signature was forged.    The good faith of the certificate of acknowledgment was not spoken of; but if we assume that their effect is indirectly to challenge this certificate, and hence admit that plaintiff did, in this equivocal way, dispute its validity, he is yet in no better attitude, for " the unsuported testimony of a party to a deed, that he did not execute it, shall not prevail over the official certificate of the officer taking the acknowledgment."    *Kerr v. Russell, supra; Lickmon v. Harding*, 65 Ill. 505.

While the certificate of the officer may in some cases

be impeached for fraud, duress, or gross concurrent mistake, the proof to sustain the charge "is required to be of the clearest and strongest, and of the most convincing character, and by disinterested witnesses." *Kerr v. Russell, supra; Baird v. Johnson,* 98 Ill. 78.

The reasons for these rules are obvious and satisfactory. They are essential to the security of titles. If the solemn deed of a party to real estate, duly attested by a public officer and recorded according to law, may be avoided by the grantor's individual oath or by anything short of clear and convincing evidence, the efficacy of recording statutes is largely destroyed, and the title to such property is precarious indeed. Public policy, as well as individual security, require that the ownership and peaceful possession of land should be subjected to no such hazard.

Let us illustrate the force of these conclusions by the case at bar. The instrument in question was regular in form, it was duly recorded, the certificate of acknowledgment complied with the law in all essential particulars, and there was absolutely nothing to advise parties dealing with the property of the alleged forgery. There is no claim or pretense that defendant is not an innocent purchaser for valuable consideration, without notice of any such defect. For sixteen years plaintiff paid no taxes, and neither exercised nor attempted to exercise any of the rights of ownership over the property. Ever since its purchase in 1872, defendant and parties holding title through defendant have been in undisputed possession, and have discharged the burden of taxation. Without one word of objection from plaintiff, they have been permitted to expend large sums of money in the erection of buildings, and placing of other permanent improvements upon the premises, such improvements comprising a large part of the town of Manitou. Under these circumstances, and at the end of the sixteen years, plaintiff returns to the state, and by his individual oath, substan-

tially unaided, undertakes to destroy the force and effect of an official certificate, and to undermine the apparently perfect title to this valuable property. The acknowledging officer, who is present and is friendly to plaintiff, is not called upon to say that the certificate is a forgery, while plaintiff himself avoids giving any direct evidence to this effect. The negative testimony of certain witnesses as to plaintiff's presence in Colorado, on the 1st of February, 1867, when the acknowledgment purports to have been taken, is entitled to but little weight. He himself admits that in November or December preceding he was here, but asserts that he then left and went to Cheyenne. Had the *bona fides* of the certificate in question been submitted to a jury upon all the evidence, with a proper instruction, and by them resolved for plaintiff, it would have been the court's unquestioned duty to vacate the special finding. Plaintiff failed, both in the *quantum* and kind of proof, to establish his charge of forgery. See *Kerr v. Russell, supra*, and cases cited; *Harkins v. Forsyth*, 11 Leigh (Va.), 294.

We do not rest our decision as to the power of attorney upon the rule cited, that "in favor of innocent purchasers for valuable consideration, without notice, it (the certificate of acknowledgment) is conclusive as to all matters which it is the duty of the acknowledging officer to certify, if he has jurisdiction." Whart. Ev. sec. 1052, and cases. Had plaintiff clearly and convincingly established the fact that both his signature and acknowledgment were forgeries, this rule would have no application, even though defendant is a purchaser of the kind described.

The deed to Palmer, executed by Pollock under the power of attorney above mentioned, which conveys eighty acres including the specific lots and parcels of land in the complaint referred to, is valid. Counsel for plaintiff asserts that the certificate of acknowledgment thereto attached is defective, but he makes no other or further reference to the subject in argument. We are

not advised of the particular defect upon which he relies. While this acknowledgment is somewhat informal, we think there is a substantial compliance with the statute of 1861, which was in force when the conveyance was executed.

It is our opinion that the title of plaintiff, and whatever possessory rights he held in the premises, passed to Palmer through these instruments. If this conclusion be correct, it follows that plaintiff could not recover.

The assignments of error relating to the admission of evidence and to the giving and refusing of instructions need not be considered. Appellant could in no way be prejudiced by the expert testimony concerning his signature; the matter being, by virtue of the law, as we have already seen, wholly immaterial. Under our views above expressed there was no necessity for submitting any question of fact to the jury, and the instruction to return a verdict for defendant was in order.

Plaintiff admits the due execution and delivery to Pollock, in 1867, of an absolute deed, referring to the identical eighty-acre tract above mentioned. This title, such as it was, also passed by deed to Palmer and through him to defendant. But plaintiff now undertakes to avoid the effect of this line of conveyances, on the ground that there was a patent ambiguity in the description, which renders inoperative the deeds to Pollock, and from Pollock as grantor to Palmer. Whether these deeds be valid, or, as plaintiff claims, void for uncertainty, is a matter we deem it unnecessary to discuss, for if valid, the title to the premises therein described passed to Palmer; and if void, a like result followed, as we have seen, through the power of attorney and deed from Pollock, as attorney in fact, to Palmer.

The foregoing conclusions being decisive of the case, we shall decline to lengthen this opinion by a discussion of the defense resting upon the statute of limitations.

The judgment is affirmed.                    *Affirmed.*